PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY JO SHANNON SLICK, | ) | |
| | ) | CASE NO. 5:26-CV-00029 |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| GOVERNING BOARD *of the* STARK | ) | |
| STARK COUNTY EDUCATIONAL | ) | **MEMORANDUM OF** |
| SERVICE CENTER, *et al.*, | ) | **OPINION AND ORDER** |
| | ) | [Resolving ECF No. 11] |
| Defendants. | ) | |

## I. INTRODUCTION

Plaintiff Mary Jo Shannon Slick was general counsel at an Ohio public education agency from 1997 until she was fired in 2025. Believing that her termination was unlawful and pretextual, she sued her ex-employer and two of its officers for a violation of procedural due process and breach of contract. Defendants argue that Plaintiff had no constitutional or contractual right to public employment and move to dismiss both claims under Fed. R. Civ. P. 12(b)(6).

The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claim under 28 U.S.C. § 1367. To survive dismissal, Plaintiff must plausibly allege the state deprivation of a protected property interest without due process of law, and Defendants must plausibly allege the existence of a contract, performance, breach, and damages. On review, Defendants' Motion to Dismiss (ECF No. 11) is granted in part and denied in part.

## II. BACKGROUND

### A. History [1]

The Ohio General Assembly created "county boards of education" in 1914 to reorganize disconnected rural school districts across the state. *See* Ohio Auditor of State, *Ohio's Educational Service Centers: Operational Study* (May 28, 2020). In 1995, it rebranded the boards as "educational service centers" ("ESCs"), public organizations that provide administrative, technological, and professional support to local school districts. *See* Ohio Rev. Code § 3311.05. By law, any school district with fewer than 16,000 enrolled students must partner with an ESC. *See* Ohio Rev. Code § 3313.843. ESCs are considered "school districts" under state law, *see* Ohio Rev. Code § 3311.055, and "local education agencies" under federal law, *see* 20 U.S.C. § 7801.

By statutory default, legal counsel for each ESC is "the prosecuting attorney of the county in which the largest number of pupils supervised by the governing board of the educational service center reside." Ohio Rev. Code § 3313.35. But statute also authorizes ESC boards to hire their own legal counsel. *See* Ohio Rev. Code § 309.10. Many ESCs exercise that option to "avoid potential conflicts of interest" and "receive more specialized services than statutory counsel can provide." Kyle A. Knapp, *One Cannot Serve Two Masters: Solving the Inherent Conflicts of Interest in Statutory Legal Counsel for Ohio School Boards*, 26 Cap. U.L. Rev. 141, 141–42 (1997)

---

[1] As it must, the Court construes the following in the light most favorable to Plaintiff, accepts her well-pleaded allegations as true, and draws all reasonable inferences in her favor. *See* *Bruce v. Adams and Reese, LLP*, 168 F.4th 367, 375 (6th Cir. 2026).

One ESC, the Stark County Educational Service Center ("Stark ESC"), serves 22 school districts across four counties in Northeast Ohio. Stark ESC is led by a five-member "Governing Board," managed by a superintendent, and administrated by treasurer. The Governing Board is a "school board" under state law. *See* Ohio Rev. Code § 3311.055. It hired Plaintiff as its general counsel in 1997 under Ohio Rev. Code § 309.10. *See* ECF No. 1 at PageID ##: 3–5, ¶¶ 12, 24. Her decades-long employment was regulated by a series of multi-year contracts called "Employment Agreements." *See* ECF No. 1 at PageID #: 3, ¶ 15. The latest Employment Agreement was approved in January 2024 and bound the Parties to a new, five-year work term from July 1, 2025 to June 30, 2030. *See* ECF No. 1 at PageID #: 219. The contract contains an explicit provision that "General Counsel may terminate this contract with sixty (60) days' notice." ECF No. 1 at PageID #: 9, ¶ 1.

In 2024, "friction" flared between Plaintiff and Joe Chaddock, Stark ESC's superintendent. ECF No. 1 at PageID #: 4, ¶ 22. Chaddock also serves on the board of the Stark County Schools Council of Governments ("Stark CoG"), a consortium of school districts that manages, *inter alia*, a $500,000,000.00 health insurance fund. *See* ECF No. 1 at PageID #: 4, ¶ 22. At the time, he simultaneously served on the board of a private health benefits company that allegedly contracted with Stark CoG. *See* ECF No. 1 at PageID #: 214. In Plaintiff's view, Chaddock was upset that she raised conflict concerns regarding his dual board roles. *See* ECF No. 1at PageID #: 4, ¶ 23. Chaddock says that he accepted Plaintiff's advice and resigned from the private board in 2024. *See* ECF No. 20 at PageID #: 195.

On October 13, 2025, Plaintiff received a letter titled "Notice of Loudermill Hearing" from James Carman, Jr., Stark ESC's treasurer. *See* ECF No. 1 at PageID #: 4, ¶ 24. The letter said:

> I am writing to notify you that the Stark County Educational Service Center Governing Board ("Board") will consider terminating your General Counsel Contract with the Board after it considers and acts to eliminate the General Counsel position. I am enclosing a draft resolution for your review.
>
> The Board will conduct a *Loudermill* hearing on October 16, 2025 at 3: 15 p.m. We will meet at 6057 Strip Ave, N.W., North Canton, Ohio. You have the right to representation at this hearing.

ECF No. 1 at PageID #: 12. On October 16, 2025, the Governing Board convened and passed a resolution declaring, in relevant part, that:

> WHEREAS, the Board believes it is in the best interest to and eliminates the General Counsel position effective at 11:59 p.m. on October 16, 2025; and
>
> WHEREAS, the Treasurer has provided [Plaintiff] with grounds for the termination of her General Counsel Contract and has provided her with a draft copy of this resolution and provided her with a full opportunity for her to provide any information she wanted the Board to consider before making this decision; and
>
> WHEREAS, after providing [Plaintiff] with this opportunity and having considered any information she provided during that meeting, the Board determined to terminate Slick's General Counsel Contract because the position no longer exists[.]

ECF No. 1 at PageID ##: 13--14. Plaintiff was terminated that day. *See* ECF No. 1 at PageID #: 14.

### B. Proceedings

On October 30, 2025, the Governing Board sued Plaintiff in the Stark County (Ohio) Court of Common Pleas for conversion, replevin, and breach of contract. *See* *Governing Bd. of the Stark Cty. Educ. Serv. Ctr. v. Slick*, No. 2025-CV-02371 (Stark Cty. Ct. Com. Pl. Oct. 30, 2025). The complaint claims the Governing Board discovered on July, 30 2025 that Plaintiff was shredding documents and deleting of electronic records in violation of Ohio law. *See* ECF No. 11–2 at PageID #: 100, ¶ 3. It also claims she "surreptitiously absconded" with

records after learning she would be fired, and that the Governing Board "terminated the general counsel position on October 16, 2025" as a result. ECF No. 11–2 at PageID #: 100, ¶ 4.

On January 6, 2026, Plaintiff sued the Governing Board, Chaddock, and Carman in federal court on two causes of action. *See* ECF No. 1. *Claim I* is a procedural due process claim against all three Defendants. *See* ECF No. 1 at PageID #: 5–6, ¶¶ 33–39. *Claim II* is a breach of contract claim against the Governing Board alone *See* ECF No. 1 at PageID #: 5–7, ¶¶ –45. Plaintiff seeks compensatory, consequential, incidental, and punitive damages, fringe benefits, interest, fees, costs, and expenses. *See* ECF No. 1 at PageID #: 7. Defendants answered and moved to dismiss under Rule 12(b)(6). *See* ECF Nos. 11, 12. Their motion is fully briefed. *See* ECF Nos. 17, 20.

### C. Threshold Dismissal

Plaintiff concedes to dismissing (a) Claim I against Chaddock in his official capacity, (b) Claim I against Carman in his official capacity, and (c) Claim I against Carman in his individual capacity. *See* ECF No. 17 at PageID #: 158. She opposes dismissing (a) Claim I against Chaddock in his individual capacity, (b) Claim I against the Governing Board, and (c) Claim II against the Governing Board. *See* ECF No. 17 at PageID #: 158. She contests whether Chaddock and Carman should be dismissed with or without prejudice. *See* ECF Nos. 11 at PageID #: 79, 17 at PageID #:160.

On the contested dismissal for Claim I in Chaddock's individual capacity, Defendants prevail. A "damage[s] claims against government officials arising from alleged violations of constitutional rights must allege, *with particularity*, facts that demonstrate what *each defendant* did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673,

684 (6th Cir. 2008) (emphasis added). Official capacity constitutional claims "cannot be founded upon conclusory, vague or general allegations[.]" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). The Complaint makes many conclusory allegations against Chaddock, but fails to explain how those allegations establish liability in his individual capacity. *See* ECF No. 11–1 at PageID #: 86. The contested claim bears all the marks of a proscribed and "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. On the prejudice question, however, Plaintiff prevails. Dismissal with prejudice is serious because it "operates as a rejection of the plaintiff's claims on the merits" and precludes relitigation under *res judicata*. *Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 575 (6th Cir. 2010). Defendants offer no justification for such a significant sanction. The Motion to Dismiss (ECF No. 11) is granted in part: Claim I is dismissed without prejudice as to Chaddock and Carman in both their individual and official capacities. Only the Governing Board remains.

## III. LAW

Civil cases start with complaints. A complaint must clearly and concisely explain why the plaintiff deserves relief. *See* Fed. R. Civ. P. 8(a)(2). The standard is plausibility, which is more than possibility but less than probability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires specific facts linking the defendant to the unlawful conduct. *See id.* Conclusions, speculations, and "naked assertions" are not specific facts. *Id.* (quoting *Twombly*, 550 U.S. at 555.

In response to an anemic pleading, a defendant can move to dismiss for failure to state a claim under Rule 12(b)(6). Once the motion is briefed, courts use a two-step process to

resolve it. *See Dyda v. Michigan Sec'y of State*, No. 26-1228, 2026 WL 2085527, at *3 (6th Cir. July 20, 2026). *First*, they pretend the plaintiff's factual allegations are true and draw all reasonable inferences in her favor. *Id.* *Second*, they use those presumptions and inferences to decide whether the complaint states a plausible claim for relief. *See Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025).

There are a few caveats. First, only "well-pleaded" allegations are presumed true. *Iqbal*, 556 U.S. at 679. Second, courts ignore legal conclusions disguised as factual allegations. *See Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555). Third, courts are generally limited to the "four corners" of the complaint. *Blackwell v. Nocerini*, 123 F.4th 479, 486 (6th Cir. 2024). Courts can consider some exhibits, public records, and attachments. *See Hodges v. City of Grand Rapids*, 139 F.4th 495, 510 (6th Cir. 2025). And fourth, because it is more art than science, rightly resolving a motion to dismiss requires equal parts common sense and legal experience. *See Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### A. Step I

To begin *step one*, the Court accepts the following well-pleaded facts as true. *See Dyda*, 2026 WL 2085527, at *3.

1. Plaintiff is an American citizen and lives in Summit County, Ohio.
2. Carman is Stark ESC's treasurer.
3. Chaddock is Stark ESC's superintendent.
4. The Governing Board hired Plaintiff as Stark ESC's general counsel in 1997.
5. Plaintiff's employment was controlled by multi-year contracts approved by the Governing Board.

6. Plaintiff's most recent Employment Agreement was approved by the Governing Board in January 2024, executed on June 20, 2024, and effective July 1, 2025 through June 30, 2030.

7. Section 1 of the contract states that Plaintiff "may terminate this contract with sixty (60) days' notice."

8. After the Employment Agreement was adopted, Plaintiff "experienced friction" with Chaddock.

9. Carman sent Plaintiff a letter on October 13, 2025 regarding a draft resolution to terminate her position and scheduling a hearing for October 16, 2025.

10. No other justification for the termination was communicated to Plaintiff.

11. At the October 16, 2025 hearing, no justification beyond elimination of the general counsel position was cited by the Governing Board.

12. On October 30, 2025, the Governing Board filed a separate lawsuit against Plaintiff asserting a new reason for her termination.

13. That lawsuit alleges Plaintiff was shredding documents and requesting deletion of electronic records before she was terminated.

*See* ECF No. 1 at PageID #: 212–15, ¶¶ 1–30.

Next, the Court does not presume the following allegations are true because they are legal conclusions or not well-pleaded. *See* *Iqbal*, 556 U.S. at 680 ("We [continue] our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth").

1. Supplemental jurisdiction exists.

2. Plaintiff was an exemplary employee with no record of any performance issues.

3. The repeated contract renewals and pay raises reflected Plaintiff's strong work performance.

4. The Employment Agreement did not provide any mechanism for the Governing Board to terminate Plaintiff's employment.

5. Only Plaintiff could terminate the Employment Agreement.

6. Chaddock's was angry over the conflict issue raised by Plaintiff.

7. The motivation for Plaintiff's termination was Chaddock's anger.

8. There was no real justification for eliminating the general counsel position or terminating the Employment Agreement.

9. Plaintiff was not provided with a *Loudermill* hearing.

10. Plaintiff would have provided "ample evidence" disproving the shredding allegations and proving the asserted reason for termination was pretextual had she been informed.

11. Plaintiff had a constitutionally protected property interest in continued employment.

12. Defendants "conspired" to deny Plaintiff procedural protection.

13. Defendants deprived Plaintiff of a property interest without due process of law.

14. Defendants acted "malicious[ly], intentional[ly], and/or recklessly or callously indifferent."

15. Defendants' conduct caused financial, reputational, and other compensable harm.

16. Plaintiff performed all conditions, covenants, and promises required by the Employment Agreement.

17. The Governing Boar breached the Employment Agreement because it "had no contractual basis" to terminate Plaintiff.

18. Stark ESC breached the Employment Agreement.

19. Stark ESC caused Plaintiff pecuniary harm.

*See* ECF No. 1 at PageID #: 212–17, ¶¶ 9–45.

Next, the Court accepts the following allegations as true because Defendants admit to them. *See* *Borror Prop. Mgmt., LLC v. Oro Karric N.*, LLC, 979 F.3d 491, 495 (6th Cir. 2020)

("Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court").

1. Stark ESC acted under color of state law.

2. Carman and Chaddock acted under color of state law in their official capacities.

3. Jurisdiction is proper.

4. Venue is proper.

5. Plaintiff was Stark ESC's general counsel for over 28 .

6. Due process confers a constitutionally protected property interest in employment to certain public employees.

*See* ECF Nos. 1 at PageID ##: 212–16, ¶¶ 3–34; 12 at PageID ##: 125–28, ¶¶ 3–34.

Finally, the Court draws the following reasonable inferences in Plaintiff's favor. *See* *Dyda*, 2026 WL 2085527, at *3.

1. The "friction" with Chaddock contributed in part to the Governing Board's decision to terminate Plaintiff.

2. The document shredding rationale first raised in the Governing Board's state complaint contributed in part to the Governing Board's decision to terminate Plaintiff

3. Because the Governing Board continually renewed Plaintiff's contract for 28 years without any noted issues, the termination was not the product of a legitimate misconduct concern other than the alleged shredding and friction.

4. Plaintiff was fired without pre-termination notice as to the shredding and friction claims and was not given an opportunity to respond to the allegations against her.

### B. Step II

In *step two*, the Court applies the preceding presumptions and inferences and determines whether the Complaint is plausible. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss").

#### 1. Claim I

Claim I asserts a violation of the Fourteenth Amendment against the Governing Board under 42 U.S.C. § 1983. *See* ECF No. 1 at PageID #: 6, ¶ 37. A *prima facie* 42 U.S.C. § 1983 claim requires the plaintiff to identify a constitutional right and show the government deprived that right. *See Susselman*, 109 F.4th at 870. Here, Plaintiff identifies the right to due process. The Due Process Clause says the states cannot deprive any person of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1. It has procedural and substantive facets. *See Lifestyle Communities, Ltd. v. City of Worthington, Ohio*, 165 F.4th 1013, 1026 (6th Cir. 2026). Claim I is a procedural due process claim. *See* ECF No. 1 at PageID #: 6, ¶ 37. A *prima facie* procedural due process claim requires the plaintiff to show the deprivation of a protected interest in life, liberty, or property by the state without adequate process. *See Lifestyle Communities*, 165 F.4th at 1026. At the pleading stage, plausibility is the minimum standard. *See Iqbal*, 556 U.S. at 678.

##### a. *Property Interest*

The Constitution protects more than just "real estate, chattels, [and] money." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72 (1972). Its aegis extends over "property interests" to some intangible benefits, like contract rights. *See Property Interest*, Black's Law Dictionary (12th ed. 2024). But the Constitution does not create property interests. *See Hasanaj v. Detroit Pub. Schools Cmty. Dist.*, 35 F.4th 437, 447 (6th Cir. 2022)

(citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 548 (1985)). They come from the states through "independent sources of entitlement" like statutes and contracts. *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)). States can use these independent sources to create property interests in, *inter alia*, public employment. *See* *Loudermill*, 470 U.S. at 533. But unlike property interests, the right to due process comes "not by [state] legislative grace, but by constitutional guarantee." *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974). So only "federal constitutional law" determines when a property interest gets due process protection. *Hasanaj*, 35 F.4th at 447 (citing *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 757 (2005)). And once protected, it "cannot be deprived [without following] constitutionally adequate procedures." *Kelley v. Shelby Cty. Bd. of Educ.*, 751 Fed. Appx. 650, 656 (6th Cir. 2018) (quoting *Loudermill*, 470 U.S. at 533).

Not all public employees have a protected property interest in their jobs. *See* *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). Due process is unbothered when, for example, a state can hire or fire its workers at will. *See* *Castle Rock*, 545 U.S. at 756. A protected property interest requires a "legitimate claim of entitlement" to continued public employment. *Kaplan v. U. of Louisville*, 10 F.4th 569, 578 (6th Cir. 2021). A claim of entitlement is legitimate when it is supported by "rules or mutually explicit understandings." *Id.* That includes public employees who have tenure, are removable only for cause, or have similar status. *See* *Hasanaj*, 35 F.4th at 448. A public employer's customs and practices may also support a legitimate claim of entitlement. *See* *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009).

The Governing Board argues that Ohio Rev. Code § 309.10 does not give Plaintiff a protected property interest in continued employment. *See* ECF No. 11-1 at PageID #: 91

(citing *Simiele v. Bd. of Educ. of Cleveland City Sch. Bd.*, 57 F.3d 1070 (6th Cir. 1995)).[2] In *Simiele*, an attorney-plaintiff brought a procedural due process claim against the Cleveland Board of Education after he had been terminated as general counsel. *See id.* The panel concluded the attorney-plaintiff had no property interest because his employment relied solely on state law. *Id.* The Governing Board paints *Simiele* as "binding 6th Circuit precedent" and "nearly identical to the current action[.]" ECF No. 11–1 at PageID #: 9. The Governing Board also argues that "both Federal and Ohio law clearly establish that a client has the absolute right to discharge [an] attorney and terminate the relationship at any time, with or without cause, however arbitrary." ECF No. 11–1 at PageID #: 89. It cites authority[3] purportedly confirming that the "absolute right of discharge exists regardless of whether a contract of employment exists." ECF No. 11–1 at PageID #: 90.

On the first front, Plaintiff counters that whether the Governing Board had statutory authority to hire her "says nothing about whether the parties' written contract created an entitlement to its full term." ECF No. 17 at PageID #: 153. She says the Employment Agreement gave her a protected property interest in her job regardless of what Ohio Rev. Code § 309.10 does or does not bestow. *See* ECF No. 17 at PageID #: 151. She also decries

---

[2] In its reply, the Governing Board also argues (for the first time) that Plaintiff was not a "public employee," but merely outside counsel employed on a retainer agreement. *See* ECF No. 20 at PageID #: 198. Setting aside that issues raised for the first time in a reply brief are waived, *see Stanalajczo v. Perry*, 174 F.4th 968, 977 (6th Cir. 2026), the Court rejects this argument on substance. At the pleading stage, Plaintiff plausibly falls under the statutory definition of a school board "public employee" established in Ohio Rev. Code § 145.01(A).

[3] *See The Flush*, 277 F. 25 (2d Cir. 1921); *Schwartz v. Broad. Music*, 130 F. Supp. 956 (S.D.N.Y. 1955); *De Korwin v. First Nat. Bank of Chicago*, 155 F. Supp. 302 (N.D. Ill. 1957); *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 629 N.E.2d 431 (Ohio 1994); *Moraine v. Lewis*, 784 N.E.2d 774 (Ohio App. 2d Dist. 2003).

*Simiele* as an "unpublished disposition" and "materially distinguishable" from this case. ECF No. 17 at PageID ##: 143–54. On the second front, Plaintiff argues the absolute discharge rule conflates two distinct questions: whether the Governing Board *could* fire her (on the one hand) *versus* whether she qualified for due process protection before it *did* fire her (on the other). *See* ECF No. 17 at PageID #: 152. Where Claim I is concerned, she claims the first question irrelevant and the second question is dispositive. *See* ECF No. 17 at PageID #: 152–53.

On review, Claim I plausibly alleges that Plaintiff possessed a protected property interest. Under Ohio law, the Governing Board is "a body politic and corporate . . . capable of suing and being sued, contracting and being contracted with." Ohio Rev. Code § 3313.17. A written contract with an "explicit tenure provision" like the Employment Agreement is sufficient to support a legitimate claim of entitlement to continued employment. *Perry*, 408 U.S. at 601. When resolving a procedural due process claim, "[a] contract . . . may create a property interest." *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000), abrogated on other grounds by *EOG Res., Inc. v. Lucky Land Mgt., LLC*, 134 F.4th 868 (6th Cir. 2025). Although an attorney employed solely under statute has no protected property interest, an attorney employed under statute *and* contract plausibly does. *See* 82 Ohio Jur. 3d Schools, Universities, and Colleges § 160.

The Governing Board's absolute-discharge rule is equally unpersuasive. Although "a client may always discharge a lawyer, regardless of cause and regardless of any agreement between them," termination is "not always without adverse consequence." Restatement (Third) of the Law Governing Lawyers § 32 (2000). The Governing Board's proposed rule would likely bar all procedural due process claims from ex-publicly employed attorneys.

Moreover, the Governing Board's proposed authority addresses the common law right to terminate counsel in private contract and payment disputes, not publicly employed attorneys claiming statutory, contractual, or constitutional protections. *See* ECF No. 11–1 at PageID #: 90. The Governing Board was mistaken to refer to these cases as "exact authority." [4] ECF No. 20 at PageID #: 196.

In its more relevant citations, the Governing Board still misreads the caselaw. It errs on *Simiele*'s facts, which are not "nearly identical to the current action[.]" ECF No. 11–1 at PageID #: 92. Although both *Simiele* and this case concern procedural due process claims from Ohio attorney-plaintiffs against the school boards that fired them, the Governing Board ignores the key distinction. Here, the attorney-plaintiff had a contract; there, the attorney-plaintiff did not. It also errs on *Simiele*'s law, claiming it "established . . . the Governing Board's exercise of its power of termination fails to give rise to a [§ 1983] claim as a matter of law[.]" ECF No. 11-1 at PageID #: 92. But *Simiele* says no such thing. The question in that case was whether the attorney-plaintiff's employment fell under Ohio Rev. Code 3319.02—a separate statute that gives due process protection to certain "administrative employees"—or under Ohio Rev. Code § 309.10 alone—which does not. *See* *Simiele*, 57 F.3d at 1070. Again, Plaintiff's protected property interest arises from statute *and* contract, not statute alone. In fact, *Simiele* undermines the Governing Board's argument. The panel

---

[4] Even if these cases were on point (they are not), they have little persuasive value. *The Flush* was decided in 1921, *Schwartz* in 1955, and *De Korwin* in 1957, each predating the landmark due process decisions in *Roth* and *Loudermill* by several decades. And none of them are binding; *Schwartz* comes from the Southern District of New York and *De Korwin* from the Northern District of Illinois, respected districts that are, nonetheless, out-of-circuit and non-binding. Furthermore, *The Flush* is from the Second Circuit, not the Sixth, and both *Lansberry* and *Moraine* are state court decisions which are non-binding on federal constitutional issues.

deciding that case noted in *dicta* that when "[a] public employee has a property interest in continued employment if the state created such an interest by . . . *providing the employee with a contract*." *Id.* at 1070 (citation modified) (emphasis added).

Finally, the Governing Board errs on *Simiele*'s authority, describing it as "valid Sixth Circuit precedent" because "[a]n unpublished opinion *does* have precedential effect as persuasive authority." ECF No. 20 at PageID #: 197 (emphasis in original).[5] The Governing Board is wrong.[6] Unpublished opinions in the Sixth Circuit are never binding on subsequent appellate panels or district courts. *E.g.*, *Ohio v. Becerra*, 87 F.4th 759, 782 (6th Cir. 2023) ("[an] unpublished opinion is not binding"); *Meadows v. City of Walker*, 46 F.4th 416, 424 n.15 (6th Cir. 2022) ("[an] unpublished opinion . . . is not binding upon us"); *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 283 (6th Cir. 2016) ("[the case] is unpublished, and is accordingly not binding precedent").

**b. *Deprivation***

A deprivation is the taking away or confiscation of a constitutional right without due process of law. *See* Deprivation, Black's Law Dictionary (6th ed. 1990). Some takings,

---

[5] The Governing Board says Plaintiff's contention that unpublished decisions are not precedent is "entirely fabricated." ECF No. 20 at PageID #: 197. Accusing opposing counsel of "fabricating" an axiomatic proposition of civil procedure is not zealous advocacy; it is the mark of failed adherence to the professional obligations to know the law and act with civility. *See* Model Rules of Prof'l Conduct, r. 11 (Am. Bar Ass'n 2024).

[6] This argument conflates disparate concepts. To have "precedential effect" means a case has *binding authority* (*i.e.*, inferior courts *must* follow its holding). *See* *Freeman v. Wainwright*, 959 F.3d 226, 232 (6th Cir. 2020) ("we need not look elsewhere when binding precedent from our own Circuit answers the question") (cleaned up). But "persuasive authority"—though sometimes instructive—means a case "has no independent binding force." Chad Flanders, *Toward A Theory of Persuasive Authority*, 62 Okla. L. Rev. 55, 61 (2009); *see also* Timothy Schwarz, *Cases Time Forgot: Why Judges Can Sometimes Ignore Controlling Precedent*, 56 Emory L.J. 1475, 1479 (2007) ("[t]he touchstone of persuasive authority is that the deciding court is *not* required to follow result or reasoning of the referenced authority") (emphasis added).

however, are "categorically beneath the threshold of constitutional due process." *Kerchen v. U. of Michigan*, 100 F.4th 751 (6th Cir. 2024) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)) (cleaned up). Thus, a deprivation requires "more than a negligent act[.]" *Daniels v. Williams*, 474 U.S. 327, 330 (1986). The taking must be "grossly negligent, deliberately indifferent, or intentional." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996). And when the threatened property interest is in continued public employment, it must cause "a substantial, tangible harm and . . . material change" to employment status. *Peterson v. Johnson*, 87 F.4th 833, 837 (6th Cir. 2023).

On review, the Complaint plausibly alleges a constitutional deprivation. Plaintiff experienced a "material change" in her employment status when she was fired. *Peterson*, 87 F.4th at 837. The Government Board's termination decision was not accidental, negligent, or reckless; it was the intentional outcome of a formal board resolution that ended Plaintiff's employment at a precise time, on a precise date, and for an (allegedly) precise reason. *See Bozzo v. Nanasy*, 159 F.4th 1111, 1117 (6th Cir. 2025).

**c. *Process***

After finding a deprivation, "the next step is to determine what process is due." *Bohler v. City of Fairview*, 830 F. App'x 465, 468 (6th Cir. 2020). But "different circumstances call for different processes," so courts must balance the government's interest, the individual's stake in the matter, and the suitability of the procedures used. *See Mathews v. Eldridge*, 424 U.S. 319, 321 (1976); *Kaplan*, 10 F.4th at 578 ("the *Mathews* three-part balancing test is the proper standard for analyzing a procedural due process claim of a government employee who has a property interest in his or her job") (quoting *Sonnleitner v. York*, 304 F.3d 704, 713 (7th Cir. 2002)). The "root requirement" is "an opportunity for a

hearing before an individual is deprived of any significant property interest." *Hieber v. Oakland Cty., Michigan*, 136 F.4th 308, 321 (6th Cir. 2025) (quoting *Loudermill*, 470 U.S. at 542). Here, that means a pretermination hearing. *See Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir. 1990). The formality of the hearing can vary "depending upon the importance of the interests involved[.]" *Hieber*, 136 F.4th at 321. At minimum, however, it must give the employee notice of the charges, an explanation of the evidence, and a chance to respond in self-defense. *See Hieber*, 136 F.4th at 321–22.

The Governing Board does not address adequate process in its briefs. Plaintiff argues that "a mismatch between announced grounds and actual grounds [for termination] states a constitutional violation." ECF No. 17 at PageID #: 148. She claims the letter from Carman identified only the elimination of the general counsel position, not termination for alleged document shredding or friction with Chaddock. *See* ECF No. 17 at PageID #: 148. And Plaintiff says the board hearing was pretextual because it was "framed . . . exclusively around that announced ground." ECF No. 17 at PageID #: 148.

Plaintiff's argument relies heavily on *Hieber*, 136 F.4th at 317. In *Hieber*, a Michigan county fired a longtime department head following hostile work environment accusations. *See id.* The district court concluded the pretermination procedures were satisfactory under *Loudermill* and granted summary judgment against the plaintiff. *See id.* The Sixth Circuit reversed after finding the pretermination process did not give the plaintiff notice of the specific charges and evidence against him. *See id.* at 322–23. Plaintiff reads *Hieber* to hold that a mismatch between pre-termination and post-termination justification constitutes a *per*

*se* due process violation.[7] *See* ECF No. 17 at PageID #: 156. She argues that "[h]ad the actual basis [for her termination] been disclosed during the pre-termination process, [she] would have presented evidence that her handling of client files comported with the law and that the proffered basis [for her termination] was pretextual." ECF No. 17 at PageID ##: 156–57.

On review, the Complaint plausibly pleads inadequate process. The Governing Board unquestionably has a "legitimate interest in preserving [its] fiscal and administrative resources." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 902 (6th Cir. 2019)). That includes the practical and efficient management of its employees. *See* *Kaplan*, 10 F.4th at 582. At the same time, however, Plaintiff had a significant and countervailing interest in maintaining her livelihood because the loss of income is "a serious blow to any citizen." *Roth*, 408 U.S. at 589 (Marshall, J. dissenting). She also had a legitimate interest in maintaining her personal and professional reputations and relationships. *See* *Kaplan*, 10 F.4th at 580 (citing *Loudermill*, 470 U.S. at 543). Finding new employment takes substantial time and effort, especially when an applicant is "burdened by the questionable circumstances under which [s]he left h[er] previous job." *Id.* The balance favors Plaintiff.

In their state complaint, the Governing Board admits it fired Plaintiff because she "surreptitiously absconded with [Stark [Stark ESC]'s records" on October 15, 2025. ECF No.

---

[7] Plaintiff overstates *Hieber*'s effect. The constitutional violation in that case derived from a mismatch between charges addressed in an investigatory interview and the charges addressed in the formal notice of termination. *See* *id.* at 322–24. That is, *Hieber*'s due process mismatch came between pretermination and termination, not between termination and *post hoc* justification. *See* *id.* at 324. It identified a narrow problem with pretermination procedure, not a broad rule that post-termination justification on new grounds makes the pre-termination process unconstitutional *per se*. *See* *id.*

11–2 at PageID #: 100, ¶ 4. The Governing Board also admits it learned Plaintiff was "shredding documents and requesting the deletion of electronic records" three months *before* Carman's October 13, 2025. letter. ECF No. 11–2 at PageID #: 100, ¶ 3. The federal Complaint creates a reasonable inference that neither the letter nor the hearing gave Plaintiff notice and the opportunity to respond to the specific allegations against her. It also creates the reasonable inference the Governing Board fired Plaintiff for separate, undisclosed misconduct discovered before the notice and the hearing, thereby denying Plaintiff any meaningful chance to respond to the allegations and present her side of the story. *See* ECF No. 1 at PageID #: 14.

In summary, Claim I plausibly alleges the Governing Board deprived Plaintiff of a protected property interest in continued public employment without due process of law. "[W]hether or not the discovery process w[ill] confirm or refute those allegations later in the litigation" is a question for another day. *Abbey v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, No. 25-5736, 2026 WL 2070292, at *1 (6th Cir. July 17, 2026). The Motion to Dismiss is denied on Claim I as to the Governing Board.

**2. Claim II**

Claim II is a breach of contract claim against the Governing Board under state common law. *See* ECF No. 1 at PageID #: 6–7. In Ohio, a breach of contract is the "[v]iolation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance." *Breach of Contract*, Black's Law Dictionary (12th ed. 2024). A *prima facie* breach of contract claim requires a plaintiff to plausibly allege the existence of a contract, the plaintiff's performance, the defendant's breach, and damages. *See Mentor Exempted Village Sch. Dist. Bd. of Edn. v. Lake Cty. Educ. Serv. Ctr. Governing Bd.*, 74 N.E.3d 706, 719 (Ohio App. 11th Dist. 2016).

Plaintiff claims the Governing Board "breached the Employment Agreement" when it terminated her employment with "no contractual basis[.]" ECF No. 1 at PageID #: 7. The Governing Board counters "termination of [the] contract does not constitute a breach because, as an attorney practicing law in the State of Ohio, [Plaintiff] was terminable at any time and for any reason." ECF No. 11–1 at PageID #: 82. It also claims that, because it raised its own breach of contract claim against Plaintiff in state court on the same Employment Agreement, Claim II "is a compulsory counterclaim . . . required to be brought in the state court action, if at all[.]" ECF No. 20 at PageID #: 202.

The Governing Board's compulsory counterclaim argument is unpersuasive. There are no "statute[s] or equitable doctrine[s] authorizing a federal court to enforce state compulsory-counterclaim law or otherwise manage duplicative state-federal litigation." *Quality Assocs., Inc. v. The Procter & Gamble Distrib. LLC*, 949 F.3d 283, 285 (6th Cir. 2020) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1418 (3d ed.)). And Sixth Circuit courts "cannot enforce a state compulsory-counterclaim rule against a federal litigant while the relevant state litigation is still pending." *Id.* Because the Stark County Court of Common Pleas has not entered final judgment on Defendants' breach of contract claim, the compulsory counterclaim rule does not apply. *See Slick*, No. 2025-CV-02371.

The Governing Board's second argument fares better. That body insists that the Court should dismiss Claim II for "convenience, fairness, and comity" to avoid "undermin[ing] judicial economy given the existence of parallel, ongoing litigation" in state court. ECF No. 11–1 at PageID #: 82. Because Claim II is a state-law claim, the Court's authority comes *via* supplemental jurisdiction under 28 U.S.C. § 1367. And while the issues often intersect, the

Sixth Circuit has not resolved whether supplemental jurisdiction and compulsory counterclaims are separate inquiries. *See* *Pritchard v. FTM*, LLC, No. 3:23-CV-01001-JGC, 2024 WL 3012836, at *4 (N.D. Ohio June 14, 2024). But the exercise of supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right." *Michigan Department Of Environment v. Gerald R. Ford Int'l Airport Authority*, No. 24-1734, 2026 WL 1881045, at *4 (6th Cir. June 30, 2026) (quoting *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003)). A district court can decline to exercise supplemental jurisdiction for "compelling reasons[.]" 28 U.S.C. § 1367(c).

On review, the Court declines to exercise supplemental jurisdiction over Claim II. To maximize litigative efficiency and judicial economy, competing breach of contract claims over the same Employment Agreement should be tried in a single proceeding in a single court applying a single, unified contractual interpretation. *See* *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 663 (1978) ("it would be uneconomical as well as vexatious for a federal court to proceed in a . . . [law]suit where another [law]suit is pending in a state court presenting the same issues, not governed by federal law"). This declination mitigates the risk of piecemeal and disparate adjudication, respects the significant efforts well underway in state court, and acknowledges that the state action began before the federal one. It also "serves [Ohio's] desirable goal of bringing all claims arising out of the same transaction or occurrence before the court in a single action." *Cent. W. Virginia Energy Co. v. Wheeling-Pittsburgh Steel Corp.*, 245 F. App'x 415, 425 (6th Cir. 2007). Because the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), the Governing Board's Motion to Dismiss is granted on Claim II as to the Governing Board.

## V. CONCLUSION

Defendants' Motion to Dismiss (ECF No. 11) is granted in part and denied in part. Claim I is dismissed without prejudice as to Joe Chaddock and James Carman, Jr. in their official and individual capacities. Claim I remains active against the Governing Board. Claim II against the Governing Board is dismissed because the Court declines to exercise supplemental jurisdiction over the state claim alleged therein.

IT IS SO ORDERED.

September 4, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge